As you get ready there, were the lawyers in the courtroom when the announcement was made about the possibility of some disturbance this morning? We were told that there is some work on the elevators, could be some loud booms during the morning. So, if that happens, we'll just stop momentarily and just proceed. Right. All right. You may proceed. May it please the Court. Good morning, Your Honors. I am Adam Davis here, representing the appellants, Carson Cates and Paul Russell. Mr. Russell also appears in person. Chief Justice Roberts famously stated that a court's role is to call the balls and the strikes. In this case, the district court went far beyond that role. The court staged a second game that was not on the schedule and forced certain players to change positions or even change teams, all of which was required to create federal jurisdiction that did not exist at the time of filing. Because there was no jurisdiction over this case at the time of filing, this court should determine that everything that has happened since that point, including the summary judgment that we are now appealing, is null and void. And therefore, this court should remand the case to the Circuit Court of Jackson County. I'm initially going to focus on the jurisdictional issue, but the summary judgment was also improper on the merits, and I hope to address those issues if time permits. And, of course, I will be happy to answer any questions that the Court has on any topics. Counsel, just an initial question for you. If we find that the equitable garnishment claim was not a direct action, was there subject matter jurisdiction below? Yes. Yes. Our argument does depend on the notion that it was a direct action. But I would point out that the key question is how is this particular statute interpreted in Missouri? Because we're talking about a specific Missouri statute, 379-200. And the Missouri Supreme Court has on several occasions referred to it as a direct action. This court, in the case that we mentioned in our 28-J response, the Lancaster case, referred to an action under 379-200 as a direct action. Numerous Missouri federal decisions in the district courts have referred to it, to cases under that statute, as direct action. And I understand that there are cases from other jurisdictions that hold differently, but ultimately this Court's north star in determining whether there is a direct action here or not should be that particular statute and how it's interpreted. And I think the Pendergrass case, in particular, from I believe it was the Eastern District Court, really unpacks that and explains well why the Missouri statute is similar to the basis of the jurisdictional rule regarding direct actions. Well, can I ask a question? This is, no one touched on this in the briefing. So it probably means it's an obvious, the answer is obvious, that I simply missed. This, the equitable garnishment statute, refers to situations in which there's been a recovery of a final judgment for loss or damage on account of bodily injury or death or damage to property. And this case does not involve any of those causes of action or recoveries. So what's, why does this statute apply? What's the obvious answer there that I'm missing? Well, the first point I'd make, Your Honor, is that, as you mentioned, this argument hasn't been raised below or in this Court until the attempted SIR reply, which we feel is improper and should not be considered by this Court. But I would just respectfully disagree with the characterization that this doesn't apply because it does refer to damage to property. And here there was a loss of money. And money is often referred to property in the law. For instance, in the RICO statutes, that requires a loss to business or property and a loss of money qualifies for a RICO claim, just as one example. We haven't had the chance to brief that since it wasn't raised until the SIR reply, and so it's a sticking point for the Court. Well, is there something in Missouri, is there a Missouri case out there that says, that and makes it applicable any time that there is a recovery, a judgment secured in which the defendant is insured? Is there some case out there that expands this beyond the wording of the statute? There is not a case that directly addresses that question. Their SIR reply cited one case where they said it can't be intangible property of defamation case. But that's not what we're arguing. This is tangible, this is money. This is tangible property. Again, we haven't had a chance to brief it from a quick search. I think there's a case called Taylor v. Barplan Mutual Insurance Company, 457 Southwest 3rd, 340. Admittedly, it's not on point because the specific issue is not addressed in any detail. But it was a case where the client had obtained a judgment against an attorney in a malpractice case. And then it was brought under this statute in an attempt to collect from the attorney's insurer. It goes all the way to the Supreme Court. And the Supreme Court addresses the case on the merits without anyone apparently arguing or having a problem with the fact that it was brought under this statute. And the other thing I would point to is, we cited Mazda for a different reason, which is this idea that you don't have to have the defendant being named. That's a Missouri Supreme Court case that said that the defendant is not an indispensable party in this kind of action under 379-200. And I would cite that as an example of a liberal construction of that particular statute, even though it's not exactly on point in terms of the issue that you raised. Now, we've questioned the meaning of that in Glover, haven't we? And whether or not the Missouri court, I'd put it delicately, really meant what they were saying there. Or whether it applied more broadly, let's put it that way. Yes, that's right, Your Honor. The court did question it in Glover, but it was not an ultimate holding. It was dicta in a case that was decided on another basis. And two points on that. I would say, first of all, ultimately this court's guide in determining Missouri law is what the Missouri Supreme Court has said. And while in Mazda it was a procedural issue, which Glover points out, the Mazda court felt like it had to determine the substance in order to determine whether it was okay to raise the issue for the first time on appeal. And so they actually go through the analysis and determine that the insured as a defendant is not an indispensable party. So that's the best analysis that we have. But I think the larger point is the district court should have never gotten there. The district court should have done exactly what the Eastern District did in Fleming, which was to look at the parties and see what we have is a case without subject matter jurisdiction. It's based on this Missouri statute that may or may not be properly filed. But instead of doing what the district court did and essentially fixing what the district court saw as a problem, the court only had jurisdiction to remand it at that point. Because the case as filed, there was no jurisdiction. And then the question of how that Missouri statute should be applied is ultimately a question of Missouri law that the Missouri court should decide. And that is exactly what the Fleming court held. For whatever reason, the court in this case acknowledged Fleming, but just took a different approach. So I think another case that is important for this court to consider on jurisdiction is the Grupo Dataflux case from the U.S. Supreme Court. And the reason that case is important is that it reaffirms the time of filing principle. There was some question about whether another case called Caterpillar had eviscerated this idea that the time of filing principle is sort of the guiding principle for all of these subject matter jurisdiction decisions. And what Grupo Dataflux says is, no, all Caterpillar did was apply the one and only exception we had. And if you miss a party, then that is a proper way to create subject matter jurisdiction. But that remains the only way. So if we look at this case, we had a case, and I assume you agree with us on whether it was a direct action, which you should based on Missouri precedent, then there was no jurisdiction at the time of filing. So then the question is, can it be created in the way that the district court created it by severing it and realigning the parties? So you say there was no jurisdiction because you had the same person as a plaintiff and defendant? Well, no, we did not have the insured, as filed, the insured was not a defendant. As it was initially filed, the insured was a plaintiff. And therefore, under Rule 1332C, you had a Missouri resident plaintiff, the insured, and you had a Missouri resident defendant, the insurance company Liberty, because they are viewed as a Missouri resident under that statute if it is a direct action. And so then under Group O Data Flux, the only exception to a case that is filed without jurisdiction, the only way to create it is to dismiss somebody. And if you look at the district court's order, the order is very clear that no one is being dismissed. The court explicitly says that no one is being dismissed and says that it is severing the and creating these two distinct cases and realigning the parties, doing all of those things. I'm going to just due to limited time, I'm going to quickly jump to the contract issue because we do think the clearest, if the court takes jurisdiction, the clearest basis for reversal would be that the contract exclusion does not apply. And there's one point that we didn't make in the briefing that I think is really important with regard to the Katie case. First of all, there's a case called Marquis from the Kansas Supreme Court, and everybody agrees that Kansas law applies to these substantive issues. And in Marquis, the court basically says that if there is an insurance exclusion for a particular type of claim, it has to exactly match the claim that is the basis for potential coverage. Here, the claim for which we sought coverage is a breach of fiduciary duty, and there is no exclusion for breach of fiduciary duty. But the argument was, well, that breach flowed from a contract, and that's where the district court landed. Counsel, doesn't Kansas apply the Marquis rule very narrowly? No, Your Honor. A couple of points on that. And there was a district court case in 2009, a federal district of Kansas called Continental Casualty that we cited that really unpacked that and determined whether Marquis was limited to automobile situations or whether it applied to all insurance exclusions. And what you ask goes right to the point I was getting to with regard to Katie, which is something that I had missed in the brief but wanted to say here. In the Katie case, when they are discussing Marquis, they say, the Marquis court felt compelled to reject the majority view because of rules governing the interpretation of exclusions in insurance contracts. So Katie was limiting Marquis to exclusions in insurance contracts. Not to a particular type of exclusions, but all exclusions. That's on page 97 per the Pacific Reporter. And that's exactly what we have here, is an exclusion that does not apply because it does not match the underlying cause of action. And I'm under three minutes, so if there are no further questions, I'd like to reserve  Very well. Thank you, Your Honors. Counsel? Thank you. Please, Court. So I want to start, I think, with what Judge Shepard's question about whether or not they even pleaded an equitable garnishment action, 79.200, and I think the shorter answer is they did not. So they did not meet the procedural requirement of naming insured as a defendant, and they did not, and that statute on its face does not apply to claims for money damages. We did brief that in the SIR reply, it was not in our original brief, but of course jurisdictional issues are never waived. And the only reason we pointed that out in the SIR reply is there are so many levels upon which the court can exercise jurisdiction over this case, and the obvious one is that it's not a direct action. And the gateway decision, which we put into our Rule 28 letter, because it came down after our briefing, what it recognized is that circuit courts have uniformly found that direct actions are those types of actions where you either determine the insured's fault in the action by naming them, or you already have a judgment, which is what the Missouri equitable garnishment statute is. In support of that claim about uniformity, they cite cases from the 1st, 2nd, 6th, 7th, 9th, and 11th circuits that have all held consistently. Appellants here ask the 8th circuit to be an outline, and they ask them to do that based upon some district court decisions that have gone the other way. The gateway decision from the 4th circuit that came down this year, it recognized this as one of the two printer gaps, and admittedly, that sprinkling, the rain seems to be a little heavier in Missouri than it may be in other jurisdictions, however, what the gateway says about printer grass is exactly on point. It's just wrong. They collapsed the step of getting a judgment with the step of collecting a judgment, and it's exactly that first step of getting the judgment first or getting it within the action that creates the direct action as contemplated by 1332C. And what all of those circuits have held uniformly, and this court has recognized, I believe in the home indemnity case, home indemnity versus Moore, is that the 1332C was enacted to address the Louisiana and Wisconsin statutes that allowed you to skip suing the insured in a In those cases, the fault, those were essentially negligence cases where the fault of the insured would be determined. So in 1964, Congress enacted 1332C as a direct response to those types of statutes. So every circuit court decision, including this court, that has looked at this issue in different contexts, like workers' comp claims directly against insurers, first party claims against insurers, bad faith claims against insurers. Every circuit court that has looked at this has determined that the key is if the fault of the insured is determined in that action, then it's a direct action. If the fault of the insured is not determined in that action, then it's not a direct action. But ultimately, none of this actually matters whether it's a direct action or not. One, they didn't plead it, so the court could certainly exercise jurisdiction by finding that there was no equitable garnishment claim that was made. However, what appellants have never explained is you have two separate claims. You have the contract and bad faith claim brought by the insurers, and then you have this purported separate equitable garnishment claim. Appellants have never explained why the court simply couldn't sever those as it did, and then exercise jurisdiction over that part of the case that it had jurisdiction over, even if the equitable garnishment case is a direct action. So there's no doubt that there was jurisdiction over the case we have before us once you sever out the other case. And they've, without explanation, without a case site, their claim is that this direct action imputes Missouri citizenship to Liberty Insurance for not only the equitable garnishment claim, but also for the contract and bad faith claim. And there's absolutely zero case law that would support that this 1332C imputation of citizenship should somehow apply to claims that have nothing to do with an equitable garnishment. So their position has always been, look, the court remained in Fleming. Okay, that is true. However, the fact that there were other options potentially available to the district court is irrelevant. The question is whether or not the court could do what it did, and the answer is, of course it can. So what the court recognized that the Fleming court did not recognize is that because of the way the action was pled, because they named the insured as a plaintiff and not a defendant, if the case were remanded to state court and the state court determined that the insured should be aligned as a defendant, they would also be a plaintiff. And you can't have a plaintiff and a defendant, you can't have a party as a plaintiff and a defendant in the same case. So recognizing this misjoinder, the district court applied Rule 21 appropriately to separate the cases and correct this misjoinder, which is exactly what Rule 21 is supposed to do. Do you have any information? Is there some authority out there that explains the meaning of the language in 379.200 that seems to limit it to cases involving bodily injury or death or damage to property? Are you aware of anything that expands it? No, the answer is there's none. It says what it says, and on its face it's not going to apply to a claim for money. The only case that has addressed it is the one that appellants referenced that we included in our SIR reply brief that indicates that intangible losses are not covered by that statute. They are correct that there was one case that involved money damages that this issue wasn't raised in, but that doesn't mean anything because it wasn't raised and it wasn't addressed. But on its face, the statute says that it applies to property damage and bodily injury. Money damages are consistently, in the state of Missouri, not considered to be property. So how this, again, all plays into it is, and we raised it in the context of essentially fraudulent joinder of a claim. So of course the court can decide jurisdiction on any basis. And it could be as simple as just saying regardless of whether an equitable garnishment action is a direct action, it didn't plead one. So therefore, the court has jurisdiction. Appellants have acknowledged that absent this imputation of citizenship on Liberty Insurance, the court had jurisdiction over the entire case. And so that being the case, it could obviously sever, do whatever it wanted to do with both sides of the case. And I also think inherent in the district court's order is that it believed that this was not a direct action. And or it believed that direct action imputation of citizenship didn't apply to the claims brought by the insurance. That wasn't the holding, though, was it? It wasn't. But if you, I guess, look kind of past the holding, if the court believed that it was a direct action and that Liberty Insurance was a Missouri citizen for both halves of the case, then it would be a local defendant and it can't remove it. So and that's what happened in Prendergast. There wasn't, it wasn't that there was a lack of diversity between the parties. It was that once you have the imputation of Missouri citizenship, you become a local defendant and you can't remove the case. So if the court had believed that this was a direct action and somehow that direct action applied to two separate and distinct claims that had been brought together, then it would have had to remand it because you'd have had a local defendant who could not remove it. So I think inherent in that order is the court recognized two things. One is they pled it wrong. And to correct that misjoinder, you had to separate them. And two is it's not a direct action. But again, I think it comes down to simply the court exercised appropriate jurisdiction and discretion. Remember Rule 21, severance, the court has almost unlimited discretion to do it when it believes it to be appropriate. And we get, you know, it's much simpler to simply say it's not a direct action, obviously, because it either is or it isn't. Obviously we believe it's not. But once you get to the Rule 21, I mean, even if you had a non-diverse party on a portion of the case, the court could do exactly what it did. I mean, the cases are consistent that a non-diverse dispensable party can be dismissed at any time. So that case was remanded. And it would have been remanded immediately if the court had understood, had known what the citizenship of the trust was. So again, we go back to if the court waited for the citizenship of the trust, obviously the court did not believe that the direct action imputation of citizenship mattered because it would have had a basis to remand it. So kind of in sum here, their whole argument is premised on, look, another court did it differently. Another court exercised its jurisdiction differently. That does not mean the court couldn't do what it did here. Well here, the district court severed this action into two separate lawsuits, correct? Correct. But it also realigned the parties by taking a plaintiff and making the plaintiff a defendant in one of the lawsuits, correct? Now isn't that quite a stretch in Rule 21? Actually, I think what the district court recognized is the court has an obligation to look through the pleading and reorganize parties as their true interests lie. And on its face, they claimed it was an equitable garnishment claim. The court didn't recognize it as such, but to create an equitable garnishment claim, it had to add the insurance as a defendant in the action. So it is a correction of a misjoinder that allows those two suits to actually be brought because they can't really be brought together the way they pleaded. You can't have the insureds be a plaintiff and a defendant. They could have simply named the insureds as a defendant and then had the insureds bring a cross-claim against Liberty Insurance. And if that had occurred, none of this would be here on this particular case. But they didn't do that. So they chose, for whatever strategic reason, to name the insureds as a plaintiff, and that's what created the jurisdiction. So just addressing the merits here in the time I have remaining, there's two arguments here. They've now focused on the fiduciary coverage, but that whole claim is premised on their contention that the definition of a plan under the policy is very broad. However, the definition of a plan under the policy is actually extremely limited. While various types of benefits could fall under the definition of a plan, those plans must be solely for the benefit of the employees of the company. So even though there may be multiple kinds of plans that fall under that definition, they are all limited by their purpose. The purpose must be solely for the benefit of the employees. In this case, the record is 100 percent clear that the beneficiaries of that shareholder agreement of the buy-sell and the life insurance distribution, the beneficiary of that agreement was the trust. It was the trust that held the stock. It wasn't an employee. The two beneficiaries of the plan, as they call it, the succession plan, was the company because it allowed it to retain the stock as a closely held entity, but it's also the shareholders. Those are the beneficiaries of it. It's not the employees. So they argue, well, the officers are also employees. While that may be true, as the policy defines plan, it has to be solely for the benefit of the employees. So the fact that we know that the entire purpose of the insurance payout was to pay the shareholder trust for the stock that that trust held, we know it's not solely for the benefit of the employees. And the trust that held the stock and Elizabeth Cates, who was the beneficiary of it, neither one of those were employees. So it's clear on the pleadings in the underlying case as well as the actual judgment that there's no plan here. There's also absolutely zero evidence or zero allegations that Paul Russell or Carson Cates were acting as fiduciaries of a plan. The judgment against Paul Russell was solely for his position as an officer of the company and basically diverting these funds that were intended to go to the shareholder, Libby Cates. So in order to find for impellants that this policy covers as a fiduciary coverage, you basically have to ignore the pleading in the underlying case and every single fact that was found in the judgment. There's zero evidence of it, and they have the burden to show that they fall under the fiduciary coverage. On the contractual exclusion, I'll say in my remaining time, Marquis doesn't say, I think Mr. Davis referred to it as, Marquis says that the exclusion and the cause of action must exactly match. It says nothing like that. Clearly you can contract around Marquis. There's cases subsequent to it that have found that. That occurred here. So when you combine the definition of claim with the definition of arising out of, based on, claim means a legal action. Claim means, it doesn't mean a cause of action. So collectively, when you read that into the definition, it refers to anything or any lawsuit that arises out of breach of contract. So regardless of the applicability of Marquis, whether it's good law, bad law, it should be ignored. It doesn't matter. They contracted around it, and in order to accept Appellant's interpretation of Marquis, you'd have to determine that Kansas is outlawed freedom of contract. I think my time is up. So unless there's any questions, I shall sit. Thank you. Thank you. Mr. Davis. May it please the court. First I want to address the question of direct action and this question of whether an action for money damage is damage to property. And I think the key point here, as it relates to jurisdiction, is that it is a direct action. And then there is a separate merits question as to whether that direct action can recover for the loss of money. But numerous Missouri Supreme Court cases, a case in this court, have described an action brought in these circumstances against an insurer to recover damages from an underlying action without naming the insured as a defendant have been held as direct actions. What the appellees are trying to say now is that this is an instance of fraudulent joinder. But that's simply not the case, regardless of how your honors read the statute. Fraudulent joinder is a doctrine where an additional defendant is added in order to defeat diversity. Here there is only one defendant. So if this, if the merits of the claim were a basis to deny jurisdiction, every case could be removed. A defendant could say, here's my notice of removal, and now here's my 12B6 motion. There is no valid claim against me. That is not what the doctrine of fraudulent joinder is. So this is not a jurisdictional issue at all in terms of what the statute says. This court should do exactly what the Fleming court did and say, there's no jurisdiction at the time of filing. There are doubtful questions about the interpretation of this statute. We are going to send it back to the Missouri State Court. And so the state court can apply this doctrine of Missouri law. Counsel for Liberty stated that we were asking this court to be an outlier. That is not what we are asking this court to do. We are asking this court to apply the decisions of the Missouri Supreme Court on Missouri law as this court is obligated to do. And the last point I'll hit is with regard to Rule 21, counsel was saying that there is virtually unlimited jurisdiction. And I would agree with that in cases where there is already jurisdiction. Once there is already jurisdiction, yes, the court has unlimited jurisdiction to sever cases. But our point is that there never was jurisdiction and that Rule 21 has never by any federal court been held to be a valid way to create jurisdiction. And for that, I cite the Ravenswood case that's discussed in our brief from the 10th Circuit. And they explain in a case with very similar facts or at least procedural history why doing exactly what the district court did here is improper. And I see my time is up. Are there any questions? All right. All right. Thank you, Your Honor. All right. Thank you, counsel. The case has been well argued and it is submitted and a decision will be rendered as soon as we can take care of it. Thank you very much.